UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION (WATERLOO)

| | |
|---|---|
| JON Q. WRIGHT and JQ LICENSING, LLC | Case No.: 6:25-cv-2050 |
| Plaintiffs, | |
| v. | COMPLAINT |
| THE CEDAR VALLEY WALLEYE CLUB | |
| Defendant. | |

# COMPLAINT

Plaintiffs Jon Q. Wright and JQ Licensing, LLC ("JQW" or "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustration of a highly detailed walleye fish (the "Subject Work"). Plaintiffs seek to obtain injunctive relief against Defendant The Cedar Valley Walleye Club ("CVWC") to stop their continuing infringement and prevent any further unlawful infringement of the Subject Works. Defendant's acts of infringement have damaged Plaintiffs' business and threaten to damage it further. Plaintiffs seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendant's profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

1

## THE PARTIES

2. Plaintiff Jon Q. Wright ("JQW") is an individual domiciled and residing in the State of Montana.

3. Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQL"). Wright licenses his artwork exclusively through JQ Licensing.

4. CVWC is a domestic nonprofit formed and existing under the laws of the State of Iowa, with a principal place of business in Cedar Falls, Iowa.

## JURISDICTION AND VENUE

5. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

6. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

7. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

## PLAINTIFFS' WORK OF ART

8. In 1993, JQW authored Walleye Green Lure, which consists of a highly detailed depiction of a walleye fish jumping out of the water after a green and yellow lure. A reproduction of Walleye Green Lure is shown below:



9. JQW duly registered Walleye Green Lure with the U.S. Copyright Office under Registration No. VAu 1-021-822, as part of a collection of illustrations of different species of fish, all authored by JQW. A copy of the JQ Fish Art registration, with the corresponding deposit material, is attached as **Exhibit A**.

10. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

11. In order to create his detailed fish illustrations, including the Subject Works at issue here, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

12. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the

fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

13. Only then does JQW begin the sketching process, referring to the photographs to painstakingly depict the precise details of the fish with detail paintbrushes.

14. JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

15. With the Subject Works JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," swimming in freshwater, or to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

16. In connection with Walleye Green Lure, JQW took many creative liberties in depicting the walleye, including, but not limited to: combining two distinct viewpoints into a single pose to create an anatomically impossible curvature; enlarging the body length and girth to convey the impression of a trophy-sized fish; altering the position, angle, and symmetry of the dorsal, pectoral, ventral, and anal fins to enhance a sense of motion; adding an exaggerated downward bulge and shadowing to the belly to suggest depth and mass beyond what exists in nature; repositioning and resizing the eye, and adding highlights and detailing to create an aggressive predatory expression; and applying stylized coloration, scale patterning, and dramatic shading that exceed natural appearance to achieve a dynamic, three-dimensional effect.

17. JQW's artwork has been painstakingly created, with each minute detail being depicted precisely in the artwork.

18. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

19. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

20. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

21. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## DEFENDANTS' INFRINGING CONDUCT

22. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

23. CVWC organizes, operates, conducts, and hosts fishing tournaments in Iowa.

24. In connection with these activities, CVWC engages in widespread advertising and marketing to attract participants, sponsors, and community support for its tournaments and events. Such advertising includes, but is not limited to, posters, flyers, and social media postings.

25. Without authorization or license from Plaintiffs, CVWC incorporated and displayed copies of the Subject Work in its advertising and marketing materials (the "Infringing Materials"). These uses appeared in materials advertising and promoting CVWC's fishing tournaments and related events, including but not limited to tournament announcements and event advertisements disseminated online and in print.

26. Directly below are exemplars from the Infringing Materials:





6

27. Directly below are side-by-side comparisons with the Subject Work (left) and an exemplar from the Infringing Materials (right):

 

28. As demonstrated above, the Infringing Materials contain exact or virtually identical copies of the Subject Works and these similarities are so precise as to preclude coincidence or independent creation.

29. In or about 2011, Plaintiffs learned that CVWC was using the Subject Work without authorization on its website and in event promotional materials. Plaintiffs then demanded that CVWC immediately cease all infringing uses of the Subject Work.

30. Following receipt of Plaintiffs' cease-and-desist letter, CVWC altered the logo appearing on its website to remove the Subject Work from prominent display. Plaintiffs reasonably believed at that time that CVWC had ceased its infringing use altogether.

31. Nevertheless, CVWC continued to incorporate copies of the Subject Work into its event flyers and related promotional materials after 2011.

32. In December 2024, Plaintiffs discovered that CVWC was again publicly displaying infringing copies of the Subject Work in marketing materials, including flyers and advertisements promoting CVWC events. These flyers contained the Subject Work both standing alone and

7

embedded in CVWC's infringing logo, which appeared in reduced opacity and beneath overlaid text.

33. Plaintiffs immediately issued another cease-and-desist letter to CVWC in December 2024, specifically identifying this continued unauthorized use.

34. Despite this renewed notice, CVWC persisted in creating and disseminating new Infringing Materials into 2025.

35. Upon information and belief, CVWC created, reproduced, displayed, distributed, or otherwise exploited the Infringing Materials on numerous separate occasions throughout the years.

36. Each such act constitutes a separate act of infringement under 17 U.S.C. § 507(b) and gives rise to new and individual claims under the Copyright Act.

37. CVWC's continued exploitation of the Subject Work after receipt of the 2011 and 2024 cease-and-desist letters was willful.

38. CVWC's unauthorized use of the Subject Work was intended to, and did, promote CVWC's activities, attract participants, and enhance the visual appeal and perceived professionalism of its marketing efforts, all to CVWC's commercial benefit and Plaintiffs' detriment.

39. The allegations herein are made as to all material, products, photographs, advertisements, etc., that CVWC used, created, copied, marketed, displayed, distributed, or sold that incorporate the Subject Work, and the images and comparisons depicted herein are only exemplars.

40. CVWC's acts were undertaken to reap the creative and artistic benefit and value of the Subject Work.

41. By failing to obtain Plaintiffs' authorization to use the Subject Work, or to compensate Plaintiffs for the use, CVWC avoided payment of license fees and other financial costs associated

8

Case 6:25-cv-02050-CJW-KEM    Document 1    Filed 09/03/25    Page 8 of 14

with obtaining permission to exploit the Subject Work, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

42. CVWC willfully misappropriated the Subject Work and with blatant and reckless disregard for Plaintiffs' rights in and to Subject Work, by failing to ensure its use of the same was proper, despite the fact that CVWC knew, or should have known, of its infringing nature.

43. As a result of CVWC infringement of Plaintiffs copyrights in and to the Subject Work, Plaintiffs have suffered significant damage. Specifically, Plaintiffs have lost royalties and licensing revenue and have suffered dilution and diminishment of the value of the Subject Work.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.*)

44. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

45. JQW is the sole owner of the Subject Work and holds valid copyright registrations in accordance with the United State Copyright Act.

46. The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

47. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

48. JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office prior to the acts complained of herein.

49. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Works.

50. Upon information and belief, CVWC had access to the Subject Work through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject

9

Works; and/or (c) viewing and/or downloading illegally reproduced, imported, and/or distributed copies of the Subject Work by third parties.

51. Access is also established by the striking similarity and/or identicality between the Subject Work and the artwork exploited by CVWC, precluding any possibility of independent creation.

52. The walleye in the Infringing Material is identical or virtually identical to the walleye in the Subject Works.

53. The walleyes in the Infringing Material copies all or virtually all protectible elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a walleye, as described herein.

54. CVWC infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works from the Subject Works.

55. CVWC was directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work, which at the very least included uploading copies of the Infringing Materials to the internet, distributing the same to local organizations and individuals, and displaying the Infringing Materials at CVWC's events.

56. Due to CVWC's acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

57. Due to CVWC's acts of copyright infringement as alleged herein, CVWC has obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Works. As such, Plaintiffs are entitled to disgorgement of CVWC's profits directly and

10

Case 6:25-cv-02050-CJW-KEM    Document 1    Filed 09/03/25    Page 10 of 14

indirectly attributable to CVWC's infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

58. CVWC has committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

59. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT)

60. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61. To the extent that CVWC is not directly responsible for the infringing conduct alleged herein, CVWC is vicariously liable for the direct infringement alleged herein because CVWC had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

62. CVWC had and exercised full control and final decision-making authority over the content, design, and dissemination of its advertising and marketing materials, including materials used to promote CVWC fishing tournaments and related events.

63. CVWC maintained the right and practical ability to prevent or limit the infringement of the Subject Work by: (a) reviewing, approving, declining, or otherwise supervising the preparation and publication of advertising content; and/or (b) controlling the content distributed through CVWC's official channels, including its social media accounts, email campaigns, and printed promotional materials.

64. By approving and disseminating promotional materials containing copies of the Subject Work, CVWC failed to exercise its right and ability to stop or limit infringing behavior.

65. CVWC failed to perform any due diligence to determine whether the Subject Work was protected by copyright, whether they were available for commercial use, or whether a license was required before incorporating them into CVWC's marketing efforts.

66. CVWC's unauthorized use of the Subject Work conferred a direct and obvious financial benefit upon CVWC by enhancing the visual appeal and professionalism of its promotional materials, which served as a draw to attract more participants to its fishing tournaments and related events, and to secure additional sponsorships. The infringing images were a material component of CVWC marketing strategy and created value by increasing event registrations and generating revenue from entry fees, sponsorship contributions, and associated activities that CVWC would not have realized but for its infringing use of the Subject Work.

67. Due to CVWC's acts of copyright infringement as alleged herein, CVWC has obtained direct and indirect profits they would not otherwise have realized but for the infringement of the Subject Works. As such, Plaintiffs are entitled to disgorgement of CVWC's profits directly and indirectly attributable to CVWC's infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

68. Upon information and belief, CVWC's has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects CVWC to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

69. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

**PRAYER FOR RELIEF**

   **WHEREFORE**, Plaintiffs requests judgment against CVWC as follows:

A.  that the Court enter judgment against CVWC setting forth that CVWC have willfully infringed Plaintiffs' federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2);

B.  alternatively, that the Court enter judgment against CVWC setting forth that CVWC has infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501;

C.  that CVWC and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to the Subject Work;

D.  impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of CVWC pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Works, pursuant to 17 U.S.C. §503(b);

E.  that Plaintiffs be awarded all profits of CVWC plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.  that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 505 or other applicable statute;

G.  that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.  that Plaintiffs be awarded the costs of this action; and

I.  that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date: September 3, 2025.

By: /s/ Timm W. Reid
Timm W. Reid AT0006547
Reid Law Firm PLLC
100 Court Avenue, Suite 315
Des Moines, IA 50309
P: 515-381-9842
F: 515-219-8746
E-mail: timm@treidlawfirm.com

*Attorney for Plaintiffs*